UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-577-FDW

| | |
|---|---|
| WILLIAM CARAWAN, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FNU MITCHELL, et al., )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Defendant Stephen Bird's Motion for Summary Judgment, (Doc. No. 26).

I.     **BACKGROUND**

A.     **Procedural Background**

Pro se Plaintiff William Carawan, a North Carolina state inmate currently incarcerated at Tabor Correctional Institution, filed this action on July 26, 2016, pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified as 42 U.S.C. § 2000cc et. seq. Plaintiff alleges that, while he was housed at Lanesboro Correctional Institution, the prison did not have a Zakat fund. Plaintiff alleges that, as a result, he was not permitted to practice Zakat (charity) in accordance with Islam, even though it is an Islamic pillar and other prison camps use a Zakat fund through the prison canteen. (Doc. No. 1). Plaintiff named as Defendants former Lanesboro Superintendent David Mitchell and Stephen Bird, a Correctional Chaplain at Lanesboro at all relevant times. Plaintiff requested declaratory and injunctive relief and nominal,

1

compensatory, and punitive damages. (Id.).

On March 1, 2017, this Court conducted its frivolity review, dismissing Plaintiff's claim for injunctive relief as moot because he had been transferred away from Lanesboro, and allowing Plaintiff to proceed as to his First Amendment and RLUIPA claims. (Doc. No. 10). A summons was returned as unexecuted as to Defendant Mitchell on March 30, 2017, because Mitchell is no longer employed as Superintendent at Lanesboro. (Doc. No. 12).

Defendant Bird filed the pending summary judgment motion on January 2, 2018. (Doc. No. 26). On January 2, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. (Doc. No. 29). On January 23, 2018, Plaintiff filed his response to the summary judgment motion. (Doc. No. 30).

### B. Factual Background

#### 1. Plaintiff's Allegations

Plaintiff contends in this action that his rights under RLUIPA and the First Amendment were violated while he was incarcerated at Lanesboro Correctional Institution as a result of the prison's discontinuation of the Zakat fund—a fund through which prisoners could give charity in accordance with one of the five pillars of Islam, Plaintiff's religion. Plaintiff alleged as follows in the Complaint: "I am prevented from practicing Islam's third pillar of practice because N.C.D.P.S. policy says we can't give things to one another but if the zakat fund was initiated we would be able to offer that charity by going to canteen to purchase zakat tickets. I'm not allowed due process in the deprivation of the zakat fund . . . ." (Doc. No. 1 at p. 4).

#### 2. Defendant's Summary Judgment Materials

In support of the summary judgment motion, Defendant has submitted Defendant's own affidavit; the affidavit of non-party John Herring, the current Correctional Facility Administrator at Lanesboro; and Exhibits A through H, which include the NCDPS Religious Practices Resource Guide and Reference Manual, various correspondence between Plaintiff and prison administrators, and Plaintiff's grievances. See (Doc. Nos. 27-1, 27-2). Defendant's summary judgment materials show that Plaintiff was incarcerated at Lanesboro from October 29, 2014, to August 18, 2016, when he was transferred from Lanesboro to Tabor Correctional Center. (Doc. No. 27-1 at ¶ 4: Bird Aff. & Ex. A).

NCDPS provides written guidance to NCDPS administrators, chaplains, and other appropriate staff concerning religious practices and religious paraphernalia. NCDPS's Religious Practices Resource Guide and Reference Manual ("Manual"), written and published by the Division of Prisons Religious Practices Committee, includes a list of faith practices that are officially recognized by NCDPS. This manual also includes a brief description of the basic beliefs, authorized practices, worship procedures, and authorized religious items associated with each faith group.

NCDPS recognizes Islam as an approved religion. The part of the Manual under Faith Groups includes a section for the Muslim faith that provides guidance on the Five Pillars of Islam, including Charity (Zakat). The Manual provides that Charity (Zakat) is "[m]oney collected for charity and propagation of the faith. Each facility may permit a local Zakat using the trust fund accounting system." (Doc. No. 27-1 at ¶ 5 & Ex. B at p. 6).

The Manual provides that it is within the Correctional Administrator's discretion to determine whether to establish the Zakat fund at Lanesboro. (Doc. No. 27-1 at ¶ 6 & Ex. C). The Zakat fund at Lanesboro was closed in June 2007. Defendants asserts that the closing of the

3

Zakat fund at Lanesboro was not done with any intent to discriminate against Plaintiff or the Muslim inmate group. Instead, Lanesboro's policy is within the policy requirements regarding the Zakat fund and within the scope of the Correctional Administrator's authority. (Doc. No. 27-2 at ¶ 4 & Ex. A).

In response to Plaintiff's Grievance Number 4845-15-1018, dated April 28, 2015, complaining about the Zakat fund being discontinued at Lanesboro, the facility responded that "it is at the discretion of the Correctional Administrator who makes the final decision to establish the Zakat fund or not and he has decided not to establish it since books are being ordered through inmate welfare fund, certified volunteers and the kitchen are providing for the feasts." (Doc. No. 27-1 at ¶ 8 & Ex. E at p. 2). Defendant Bird tried to explain the policy process and procedures to Plaintiff both through personal conversation and written correspondence. Specifically, on or about July 26, 2016, Defendant Bird explained to Plaintiff that the Zakat fund was not being used; therefore, it was an administrative decision to discontinue the fund at Lanesboro. Further, Defendant Bird informed Plaintiff the Zakat fund was to help the community as a whole and not for individuals' personal needs. In addition, Defendant Bird explained to Plaintiff during this conversation that the feasts, especially Eid-Al-Fitr, were being provided by the local Islamic community, and books and literature could be purchased through the inmate welfare fund. (Doc. No. 27-1 at ¶ 9 & Ex. H at pp. 001-002). Finally, Chaplain Prinn Deavens also addressed Plaintiff's concerns related to the Zakat through her conversations with him and her written correspondence. (Doc. No. 27-1 at ¶ 7 & Ex. D).

Defendant asserts in his affidavit that all items that are needed for the performance of the Muslim faith are being provided when needed by NCDPS. The Chaplaincies department will assist the Muslim community with all the items that are required, per policy, to Plaintiff's

4

religious requirements and needs. (Doc. No. 27-1 at ¶ 10). He asserts that, in the absence of the Zakat fund, Plaintiff could alternatively donate his Zakat through his prison account to a local Islamic mosque or charity. (Id. at ¶ 11). Defendant asserts that he has made every reasonable effort to accommodate Plaintiff's requests related to the practice of the Muslim faith in compliance with NCDPS's Religious Practices Resource Guide and Reference Manual. Finally, Defendant Bird denies that, in performing his duties as the Chaplain at Lanesboro, he violated any rights secured to Plaintiff under the laws of the State of North Carolina or the Constitution and laws of the United States. (Id. at ¶ 12).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must

present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

As noted, Plaintiff alleges claims pursuant to both RLUIPA and the First Amendment. Beginning with plaintiff's RLUIPA claim, RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §

2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009).  A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250.  "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8).  Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted).  "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

As for Plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I.  The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment.  See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947).  To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to

7

show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

Here, Defendant has presented evidence on summary judgment showing that Plaintiff's rights are not being violated under either RLUIPA or the First Amendment as a result of the Correctional Administrator's decision to discontinue the Zakat fund at Lanesboro. Defendant Bird has shown on summary judgment that, although he was not responsible for the discontinuation of the Zakat fund at Lanesboro, all items that are needed for the performance of the Muslim faith are being provided when needed by NCDPS. (Doc. No. 27-1 at ¶ 10). In the absence of the Zakat fund, the alternative way Plaintiff could donate his Zakat would be through

8

his trust fund account to a local Islamic mosque or charity. (Id. at ¶ 11). In addition, as noted, Defendant Bird explained to Plaintiff that the feasts were being provided by the local Islamic community and books and literature could be purchased through the inmate welfare fund. (Id. at ¶ 9 & Ex. H at pp. 001-002).

In opposing the summary judgment motion, Plaintiff has not shown the lack of a Zakat fund at the prison caused him to violate his beliefs. That is, Plaintiff simply assumes that the lack of a Zakat fund amounts to a constitutional violation, but he fails to identify how the lack of a Zakat fund caused him to modify his behavior or violate his beliefs because of the prison's suspension of the fund. Most importantly, he has not shown that the discontinuation of the Zakat fund placed a substantial burden on his right to practice the charity pillar of his religion. A substantial burden must be more than an inconvenience to an inmate's religious practice. Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007). Further, government action—here, prison policy which simply places restrictions on religious exercise more difficult, but which does not pressure the adherent violate his or her religious beliefs or abandon one of the precepts of his religion—is not a substantial burden. Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007).

In his response to the summary judgment motion, Plaintiff contends that the entire time that he was incarcerated at Lanesboro, he "was in debt to the state and therefore could not pay $5 for a money order so he was not allowed any alternative way nor reasonable accommodation to Zakat as alleged by Bird." (Doc. No. 30 at 10). Plaintiff contends, however, that he could have paid $2 or less to the Zakat fund, despite his indebtedness to the State of the North Carolina. (Id. at 24). Plaintiff asserts that "[i]n the absence of the Zakat fund there is no alternative way for me nor any other Muslim who is in debt to the state prison to pay Zakat because we are only allowed

9

$2 in our account so we can't afford the $5 money order fee."[1] (Id. at 30). Plaintiff further contends that Defendant "has failed to provide evidence that plaintiff or other inmates in debt can pay Zakat, nor showing whether there are alternative means of exercising the right[s] that remain open to those inmates." (Id. at 14). Plaintiff's or another prisoner's indebtedness to the State of North Carolina, or lack of funds in their prison trust account, does not create a constitutional violation or a violation of RLUIPA by Defendant Bird or by prison administrators at Lanesboro. Certainly, if Plaintiff or any other prisoner has insufficient funds to pay for a money order so that he can send funds from the prison to contribute to charity, then he cannot practice Zakat—but this is not the result of any action or inaction taken by prison administrators. In sum, Plaintiff has failed to raise a genuine dispute of fact on summary judgment as to whether the discontinuation of the Zakat fund at Lanesboro violated his RLUIPA or First Amendment rights.

Finally, to the extent that Plaintiff purports to seek damages from Defendant Bird in his individual capacity, Defendant Bird is entitled to qualified immunity.[2] Government officials are entitled to qualified immunity from civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[1] Defendant's responses to Plaintiff's interrogatories confirm that "there is a $5 Money Order cost fee for every check to purchase items or donate to an organization from the unit." (Doc. No. 30 at 40).

[2] At least as to RLUIPA, the statute does not authorize a private cause of action for money damages against state officials in their official or personal capacities. Shabazz v. Johnson, No. 3:12CV282, 2015 WL 789200, at *1 n.7 (E.D. Va. Feb. 24, 2015) (citing Sossamon v. Texas, 565 U.S. 277, 293 (2011); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009); Haight v. Thompson, 763 F.3d 554, 569-70 (7th Cir. 2014)). Furthermore, the Court has already found that Plaintiff's claims for injunctive relief are moot because he is no longer incarcerated at Lanesboro. Given that Plaintiff may not recover damages or obtain injunctive relief under RLUIPA, this has essentially mooted Plaintiff's RLUIPA claim. In any event, as noted, Plaintiff has not made a prima facie case of a violation of either the First Amendment or RLUIPA.

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. A court must first "decide whether a constitutional right would have been violated on the facts alleged" and then, "assuming that the violation of the right is established . . . consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). In resolving the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

First, as noted, Plaintiff has failed to demonstrate a substantial burden on his ability to practice his Muslim faith and, therefore, has failed to establish either a RLUIPA or a constitutional violation. Second, the undisputed evidence demonstrates that Defendant Bird is, nevertheless, entitled to qualified immunity because his individual conduct was objectively reasonable in light of constitutional requirements. The Court finds no authority showing that, at the time the Zakat fund was discontinued at Lanesboro, it was clearly established under the First Amendment that the lack of a Zakat fund at a North Carolina prison constitutes a violation of a prisoner's constitutional or other federal rights. Furthermore, Defendant Bird has attested under oath that his actions were not motivated by an intent to deprive Plaintiff of his ability to worship his faith. Defendant Bird asserts that he was only following the policies and procedures set out by NCDPS and was acting neutrally and rationally in carrying out those policies. The Affidavit of John Herring also shows that the closing of the Zakat fund at Lanesboro was not done with

any intent to discriminate against Plaintiff or the Muslim inmate group. Instead, Lanesboro's policy is within the policy requirements regarding the Zakat fund and within the scope of the Correctional Administrator's authority. (Doc. No. 27-2 at ¶ 4, Ex. A). In sum, even if Plaintiff could show that a constitutional violation occurred, Defendant Bird would be entitled to qualified immunity.[3]

In sum, Plaintiff has simply not come forward with evidence on summary judgment raising a genuine dispute of material fact as to whether his rights are being violated under the First Amendment or RLUIPA. Thus, Defendant is entitled to summary judgment.

## IV. CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact as to whether his rights under the First Amendment and RLUIPA were violated, and Defendant is therefore entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 26), is **GRANTED**, and this action is dismissed with prejudice.
2. The Clerk is respectfully instructed to terminate this action.

Signed: March 6, 2018

_Frank D. Whitney_
Frank D. Whitney
Chief United States District Judge

---

[3] Former Lanesboro administrator Mitchell would likewise be entitled to qualified immunity.